IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Eugene Division

| | | |
|---|---|---|
| ANTONIO NERI DUE, | ) | |
| | ) | |
| Plaintiff, | ) | 6:15-CV-00049-JO |
| | ) | |
| v. | ) | OPINION AND ORDER |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| COMMISSIONER of Social Security | ) | |
| | ) | |
| Defendant. | ) | |

JONES, J.,

Plaintiff Antonio Neri Due ("Due") appeals the Commissioner's decision denying his concurrent applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. The court has jurisdiction under 42 U.S.C. § 405(g). I affirm the Commissioner's decision.

## PRIOR PROCEEDINGS

Due received Title XVI benefits from November 1992 until October 2003. He filed several subsequent unsuccessful applications under Title II and Title XVI. In his current applications, Due alleged he became disabled on April 1, 2008, primarily from mental impairments causing him to experience difficulty focusing, multitasking, remaining calm, and controlling anger. He also alleged various physical ailments. Admin. R. 19, 170.

OPINION AND ORDER

Due satisfied the insured status requirements of the Social Security Act through September 30, 2013, and must show that he was disabled on or before that date to prevail on his Title II claim. 42 U.S.C. § 423(a)(1)(A); *Tidwell v. Apfel,* 161 F.3d 599, 601 (9th Cir. 1998). Accordingly, the relevant period for his Title II claim runs from April 2008 through September 2013. The relevant period for his Title XVI claim runs from the protective filing date of his application in June 2010 through the date of the ALJ's decision. Admin. R. 19.

The ALJ applied the five-step sequential disability determination process described in the regulations. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). The ALJ found Due's ability to perform basic work activities limited by carpal tunnel syndrome, depression, personality disorder, and anxiety disorder. Admin. R. 22. The ALJ found that Due failed to establish the criteria for any of the presumptively disabling conditions listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P ("Listings of Impairments"). Admin. R. 22. The ALJ found that, despite his impairments, Due retained the residual functional capacity ("RFC") to perform work at all levels of exertion, excluding work that required spelling or public contact or that involved more than occasional interaction with co-workers. In addition, the ALJ found that Due could not perform jobs that involved exposure to environmental irritants such as smoke, dust, and fumes. The ALJ found Due could frequently engage in gripping, grasping, and fine manipulation, but could not do work that required him to engage in such activities constantly. Admin. R. 24.

The vocational expert ("VE") testified that a person having Due's age, education, work experience, and RFC could perform the activities required in occupations such as linen sorter, circuit board assembler, and lot attendant, which represent hundreds of thousands of jobs in the national economy. Admin. R. 30, 609-611. Accordingly, the ALJ concluded that Due was not disabled

within the meaning of the Social Security Act. Admin. R. 31.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings of fact are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Under this standard, the Commissioner's factual findings must be upheld if supported by inferences reasonably drawn from the record even if evidence exists to support another rational interpretation. *Batson*, 359 F.3d at 1193; *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995).

## DISCUSSION

### I.      Claims of Error

The claimant bears the burden of showing that the ALJ erred and that any error was harmful. *McLeod v. Astrue*, 640 F.3d 881, 886-87 (9th Cir. 2011). Due contends the ALJ improperly discounted his credibility and the opinions of Jerome S. Gordon, Ph.D., Anjan Sattar, M.D., and Salvador Ortega, M.D., regarding functional limitations from his mental impairments. He contends these errors were harmful because they led the ALJ to erroneously conclude that Due did not satisfy the criteria for any of the presumptively disabling mental conditions in the Listing of Impairments and to assess his RFC in a manner that did not accurately reflect his limitations in mental functions. As a result, Due argues, the ALJ elicited testimony from the vocational expert with faulty hypothetical assumptions that did not accurately reflect the limitations that prevent him from working.

## II.    Credibility Determination

In his written application, Due alleged that his mental impairments caused him to become distracted and angry easily, to lose focus, and to have difficulty staying on task. Due alleged he had constant pain in the lower back and neck made worse by walking, sitting, and bending over. He said he required one or two naps a day, each lasting up to 3 hours. Admin. R. 178. At the administrative hearing, Due testified that he had limited use of his hands, was afraid to be around other people or in a confined area, did not feel safe in public without his dog or his wife, and had difficulty paying attention, remembering things in the short term, and completing tasks. Admin. R. 587, 588, 593, 598, 601, 603–04. Due said that smoke and certain odors made it difficult for him to breath. Admin. R. 594.

The ALJ believed some of Due's subjective statements. For example, the ALJ limited Due's RFC assessment by precluding work involving exposure to smoke or fumes to accommodate his alleged difficulty breathing, limiting work involving fine manipulation to accommodate his carpal tunnel symptoms, and limiting work involving interactions with the public and coworkers to accommodate his social anxiety symptoms. Admin. R. 24. The ALJ discounted Due's credibility to the extent he claimed that he had additional limitations in functions such as walking, bending, sitting, and maintaining attention and that his symptoms were so debilitating that they left him unable to work full time within the limitations of his RFC assessment.

An adverse credibility determination must include specific findings supported by substantial evidence and a clear and convincing explanation. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Smolen v. Chater*, 80 F.3d 1273, 1281–82 (9th Cir. 1996). The findings must be sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily

discredit the claimant's testimony. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). In assessing credibility, an ALJ must consider all the evidence in the case record, including the objective medical evidence, the claimant's treatment history, medical opinions, daily activities, work history, the observations of third parties with knowledge of the claimant's functional limitations, and any other evidence that bears on the consistency and veracity of the claimant's statements. *Tommasetti*, 533 F3d at 1039; *Smolen*, 80 F3d at 1284; Social Security Ruling 96-7p, 1996 WL 374186, at *5.

The ALJ's written decision shows that he considered all the evidence pertaining to the proper factors for assessing Due's credibility. The ALJ found that the objective medical evidence did not support some of the limitations Due claimed. Admin. R. 22. For example, the ALJ noted that Due claimed limitations from low intellectual functioning but the record did not include objective cognitive testing and clinical observations suggested average intellectual function. Admin. R. 277, 294, 330. Due claimed limitations from bipolar disorder and attention deficit hyperactivity disorder, but these diagnoses were similarly unsupported by clinical findings and appeared to be based entirely on his subjective history. Admin. R. 22.

Similarly, Due claimed significant physical impairments, including knee and back pain, but his physical examinations were typically normal, other than obesity and hypertension. Admin. R. 303, 335, 337, 341, 343, 399, 400, 401, 403, 449. Dr. Ortega believed Due's physical limitations derived from deconditioning. Admin. R. 27, 398. Due's treatment history reflects mostly routine visits and transient complaints of physical symptoms. Admin. R. 22. The ALJ correctly noted that no provider had instructed him to limit his activities. Admin. R. 22. Indeed, the record shows that Due's health care providers consistently urged him to increase activity to overcome deconditioning

and obesity. Admin. R. 398, 404, 423. Conflicts between a claimant's subjective complaints and the objective medical evidence may undermine the claimant's credibility. *Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 600 (9th Cir. 1999).

The ALJ found that Due's treatment history showed that his mental impairments improved with treatment. Admin. R. 23, 26, 266-68, 404, 406. Due reported improved focus and attention while on medications and he terminated counseling therapy because of improvements in his symptoms. Admin. R. 404. The ALJ could reasonably draw an adverse inference as to the credibility of Due's allegations of ongoing debilitating mental impairments from such evidence of improvement. *Morgan v. Comm'r*, 169 F3d at 599; *Tidwell v. Apfel,* 161 F.3d at 601. In addition, impairments that are effectively controlled by medication are not disabling. *Warre v. Comm'r of Soc. Sec. Admin.,* 439 F.3d 1001, 1006 (9th Cir. 2006).

Due's treatment history also reflects that he failed to follow up with treatment that appeared to be effective. Admin. R. 26, 29. In October 2008, Due terminated mental health treatment with Dr. Sattar after showing improvement on medications. There is no evidence that he attempted to restart treatment with Dr. Sattar or obtain a referral from him. Admin. R. 265-268. Progress notes from January 2012 show that Marion County Behavioral Health Services staff referred Due to Work Solutions but he failed to respond when contacted for services. Admin. R. 504. In July 2012, Marion County Behavioral Health Services discharged him from therapy when he failed to show up for group and individual therapy and medication management services. He did not respond when staff attempted to re-engage him in services. Admin. R. 503. A claimant's unexplained failure to seek treatment or follow a course of treatment may cast doubt on the sincerity of his disability claims. *Flaten v. Sec'y of Health & Human Serv.*, 44 F.3d 1453, 1464 (9th Cir. 1995). When a

claimant makes subjective claims of disabling symptoms, but fails to comply with prescribed treatment, an ALJ may reasonably find the subjective statements unjustified or exaggerated. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007); *Tonapetyan v. Halter,* 242 F.3d 1144, 1147-48 (9th Cir. 2001).

The ALJ also drew an adverse inference as to the credibility of Due's statements concerning the intensity, persistence, and limiting effects of his alleged symptoms because Due engaged in daily activities that showed he was not as limited as he claimed. Admin. R. 25. An ALJ may find that activities of daily living detract from a claimant's subjective statements when the activities contradict the subjective claims. *Orn v. Astrue*, 495 F.3d at 639.

Due was reportedly able to clean, shop, care for his son, cook meals, mow the lawn, work in the yard, and independently perform self care and hygiene. Admin. R. 171-173, 223. He was able to pay bills, count change, handle bank accounts and use a checkbook. Admin. R. 157. He enrolled in school in 2008. Admin. R. 273. The ALJ could rationally conclude that these activities were inconsistent with Due's subjective claims of debilitating limitations in attention, focus, memory, persistence with tasks, use of his hands, walking, bending, and so forth.

Due worked as a karaoke disc jockey and a cannery employee and enrolled in school during the time he claimed to have debilitating limitations in social functioning. The ALJ found that Due's activities such as socializing with karaoke bar patrons, attending church, talking to neighbors, and enjoying family gatherings supported an inference that, despite his limitations in social functioning, he remained capable of greater interactions with others than he claimed. Admin. R. 25. The ALJ found that Due's activities, while not equivalent to full time work, showed that he retained the capacity to perform some work-like functions, such as occasional interactions with coworkers,

-7-   OPINION AND ORDER

frequent grasping, maintaining attention and persistence to complete tasks, and so forth. Admin. R. 26. Although Due's activities did not suggest he functioned without difficulty, they did contradict his claim of totally debilitating impairments. Accordingly, the ALJ rationally drew an adverse inference as to his credibility based on his daily activities. *Molina v. Astrue*, 647 F.3d 1104, 1113 (9th Cir. 2012).

The ALJ also considered Due's work history which showed he had little propensity to work even during periods of non-disability. Admin. R. 26, 123, 162, 462, 605. Such a work history may support an adverse credibility finding with respect to a claimant's professed inability to work. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

The ALJ's findings are supported by substantial evidence in the record and are sufficiently specific for me to conclude that the ALJ did not arbitrarily reject Due's subjective statements. His reasoning is clear and convincing and the credibility determination will not be disturbed. *Tommasetti*, 533 F.3d at 1039; *Carmickle*, 533 F.3d at 1160.

### III.   Opinions of Medical and Mental Health Care Providers

Due contends the ALJ improperly discounted the findings and opinions of Drs. Sattar, Gordon, and Ortega in determining the severity criteria for his mental impairments for the purposes of the Listing of Impairments and in assessing his RFC.

Dr. Sattar met Due on April 30, 2008, when he prepared a Psychiatric Evaluation comprised of an interview and mental status examination. Due complained of problems with focus, attention, and getting along with others. He reported a subjective history of complex psychiatric problems and current depressed mood. Dr. Sattar observed that Due was oriented and cooperative and maintained eye contact. He had fair insight, judgment, and cognition. Dr. Sattar noted no psychomotor agitation

or retardation and Due demonstrated coherent and goal directed thought processes. The only abnormal clinical observations Dr. Sattar noted were less than adequate hygiene and blunted or constricted affect. Admin. R. 271. Dr. Sattar started Due on Seroquel and in May 2008, Due reported improved mood and sleep. Admin. R. 268. Dr. Sattar said Due appeared calm, more focused, and goal oriented. He then began a second medication, and in July 2008, Due reported further improvement in mood and focus. Admin. R. 266-267. Due then failed to return for further treatment with Dr. Sattar. Admin. R. 265.

Based on his limited clinical observations and Due's subjective statements in the interview, Dr. Sattar diagnosed Major Depressive Disorder and PTSD based on reported childhood abuse. Dr. Sattar assigned a global assessment of functioning ("GAF") score of 45. Admin. R. 271. The GAF score is an outdated measure of overall functioning used in previous editions of the Diagnostic and Statistical Manual of Mental Disorders ("DSM"). In the current version of the DSM (the fifth edition or "DSM-V") the GAF rating was dropped for lack of clarity and inconsistency in application, among other reasons. In the absence of a clear explanation from the clinician of a clinical basis for the GAF rating and the period to which it applies, it does not provide a reliable measure of the claimant's ability in specific mental functions over a sufficient period of time to be useful in a disability analysis. Due contends the ALJ failed to consider Dr. Sattar's GAF rating.

In fact, the ALJ did consider Dr. Sattar's GAF rating but gave it little weight. Admin. R. 26. An ALJ may discount a medical opinion for clear and convincing reasons supported by substantial evidence or, if the opinion is contradicted by other medical opinions, for specific and legitimate reasons. *Tommassetti*, 533 F.3d at 1041; *Thomas*, 278 F3d at 957. Here, the ALJ found that Due's reported activities showed that he functioned at a higher level than a GAF rating of 45 would

suggest. In addition, he correctly found that Dr. Sattar's GAF rating was premised on Due's subjective statements. Admin. R. 26. Indeed, other than the subjective statements from Due's interview, Dr. Sattar provided only the unremarkable clinical findings described previously and did not identify any specific functional limitation or work-related activity that Due could no perform. Admin. R. 271. An ALJ need not accept the opinion of a treating physician that is brief, conclusory, and inadequately supported by clinical findings. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). In addition, an ALJ may reject a treating physician's opinion if it is based to a large extent on a claimant's self-reports that have been properly discounted as incredible. *Tommassetti*, 533 F.3d at 1041. Accordingly, the ALJ did not err by discounting Dr. Sattar's GAF score.

In July 2009, Dr. Gordon performed a consultative Psychodiagnostic Evaluation in which he interviewed Due and did a mental status examination. Due told Dr. Gordon that he liked to be around people generally, but preferred to be left alone when he felt depressed. He said that when compliant with medications he was organized and could get things done in a timely fashion. Dr. Gordon found Due oriented and aware of current and past presidents. Due struggled somewhat with a simple task used to assess attention and concentration but completed the task adequately. He also performed adequately on an informal assessment of memory. Admin. R. 329. Based on these unremarkable clinical findings and Due's subjective history, Dr. Gordon diagnosed PTSD, ADHD, bipolar disorder, and obsessive -compulsive disorder. Dr. Gordon assigned a GAF rating of 40. Admin. R. 330.

The ALJ gave Dr. Gordon's GAF rating little weight for the same reasons that he discounted Dr. Sattar's GAF rating. Admin. R. 29. That is, the ALJ found the level of impairment suggested by such a low GAF rating unsupported by Dr. Gordon's clinical findings in the examination. As

noted previously, an ALJ need not accept the opinion of an examining physician that is conclusory and unsupported by clinical findings. *Bayliss*, 427 F.3d at 1216. In the absence of clinical findings, it is reasonable to infer that the ALJ relied primarily on the subjective history Due presented in the interview. For example, Due contends that Dr. Gordon found that he was "marginally functional," but Dr. Gordon based this finding on Due's subjective report that he needed reminders to take care of his hygiene needs. An ALJ may properly discount the opinion of an examining psychologist if it is premised on the subjective reports of a claimant who lacks credibility. *Tommassetti*, 533 F.3d at 1041. In addition, the ALJ found that Due's activities showed that he functioned at a higher level than a GAF rating of 40 would suggest. Admin. R. 29. Like Dr. Sattar, Dr. Gordon failed to identify any specific area of functional incapacity or any work-related activity that Due would not be able to perform. Accordingly, the ALJ did not err in his evaluation of Dr. Gordon's report.

Due established care with Dr. Ortega in September 2009 for treatment of a bout of bronchitis. Admin. R. 403. At a follow up in October 2009, Due reported a subjective history of sleep apnea, ADHD, bipolar disorder, and depression, but Dr. Ortega noted that his physical examination was normal and his mood appeared euthymic. Admin. R. 401. Due next saw Dr. Ortega in December 2009 to request documentation confirming a diagnosis of bipolar disorder so that Due could receive public services. Dr. Ortega observed that Due had a normal physical examination and that his mood appeared to be stable without emotional lability. Nevertheless, despite the absence of clinical findings to support a diagnosis of bipolar disorder, Dr. Ortega prepared the documentation Due requested to help him get services. Admin. R. 400. In January 2010, Due next saw Dr. Ortega for a routine follow up. Again, Due's physical examination was normal and Dr. Ortega found his mood euthymic. Admin. R. 399.

In April 2010, Dr. Ortega completed a Medical Opinion worksheet provided by Due's attorney. Admin. R. 422-29. In contemporaneous progress notes, Dr. Ortega said he filled out this paperwork to support Due's disability claim based on Due's self assessment and information. Admin. R. 398. On the worksheet, Dr. Ortega confirmed that he had provided primary care for non-mental health concerns, such as hypertension, sleep apnea, and bronchitis. For clinical findings, Dr. Ortega noted only that Due appeared to be in pain when bending over. Dr. Ortega opined that Due would not experience difficulty, from a physical standpoint, working full time. He suggested Due's physical limitations derived from deconditioning and would improve with increased activity and exercise. Admin. R. 423-24, 427. Dr. Ortega indicated limitations in postural activities, but reiterated that these derived from deconditioning and body habitus and were supported by subjective information provided by Due. Admin. R. 427.

The ALJ gave the limitations in Dr. Ortega's worksheet little weight because they were based on subjective information provided by Due and not on objective medical evidence or clinical observations. This is a proper basis for discounting a treating physician's opinion. *Tommassetti*, 533 F.3d at 1041. In addition, the ALJ found the limitations in Dr. Ortega's opinion unsupported by his own treatment records and inconsistent with Due's activities, reports of improvement on medications, and failure to mention the limitations in subsequent treatment visits for routine medical matters. Admin. R. 27. The ALJ's reasoning for discounting Dr. Ortega's opinion are clear and convincing and amply supported by the record.

## IV.    Listings of Impairments

The Commissioner acknowledges that certain conditions are so severe as to preclude substantial gainful activity. If the claimant can show by medical evidence that he suffers from such

a condition, the claimant will be presumed to be disabled without further inquiry. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. §§ 404.1524(d)(1), 416.924(d)(1). The presumptively disabling conditions and the criteria for establishing each are set forth in the regulatory Listing of Impairments.

For mental impairments, each listing includes a set of diagnostic criteria in paragraph A and a set of severity ratings for impairment-related functional limitations in paragraph B. An individual meets the criteria of a listed impairment when the criteria of both paragraphs A and B are satisfied. Listing of Impairments § 12.00(A). The ALJ found that Due met the diagnostic criteria for Listing 12.04 *Affective Disorders*, 12.06 *Anxiety-related Disorders*, and 12.08 *Personality Disorders*. Admin. R. 22. To satisfy the paragraph B criteria for any of these listings, the claimant must show two of the following: marked restriction of activities of daily living, marked difficulties in maintaining social functioning, marked difficulties in concentration, persistence, or pace, and repeated episodes of decompensation, each of extended duration. Listing of Impairments § 12.00(C). The claimant bears the burden of specifying how her condition satisfies the criteria for any condition in the Listing of Impairments. *Burch v. Barnhart,* 400 F.3d 676, 682-683 (9th Cir. 2005); *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001).

The ALJ considered all of the evidence relating to the degree of limitation Due experienced in each of the B criteria functional areas and made specific findings as required by the regulations. The ALJ found that Due had no restriction in activities of daily living, moderate difficulties in social functioning, mild difficulties with regard to concentration, persistence, or pace, and no episodes of decompensation. Admin. R. 23.

Due relied on the opinions of Drs. Sattar and Gordon to challenge the ALJ's B-criteria findings. His argument cannot be sustained, however, because the ALJ properly discounted those opinions as described previously. Furthermore, neither Dr. Sattar nor Dr. Gordon made specific findings regarding Due's functional capacity in any of the B criteria categories of function. Accordingly, even if the ALJ had credited their opinions, they would not have shown that Due has marked impairment in any category of function.

Although Due urges the court to accept a different interpretation of the evidence, the ALJ's conclusions were based on inferences reasonably drawn from substantial evidence in the record and the court is not free to substitute a different interpretation. *Batson*, 359 F.3d at 1193; *Andrews*, 53 F.3d at 1039-40. Due did not meet his burden to show that he had functional limitations sufficient to satisfy the paragraph B criteria for any mental condition in the Listing of Impairments.

## VI.    RFC Assessment

Due restates the same arguments to challenge the ALJ's RFC assessment, *viz.* that the ALJ failed to properly evaluate the medical opinions and improperly interpreted the evidence of his daily activities. The ALJ considered all the evidence of functional limitations and reached an RFC assessment based on the limitations supported by the record as a whole. The ALJ is not required to incorporate additional limitations he found unsupported by the record or supported only by discredited evidence. *Batson*, 359 F3d at 1197–98; *Osenbrock v. Apfel*, 240 F3d 1157, 1163–65 (9th Cir 2001); *Magallanes v. Bowen*, 881 F2d 747, 756–57 (9th Cir. 1989). Accordingly, the ALJ did not err in his RFC assessment.

## VII.   Step Five Vocational Evidence

At step five, the Commissioner must show that work exists in the national economy that can be performed by a person with the claimant's RFC. *Andrews*, 53 F.3d at 1043. The Commissioner can satisfy this burden by eliciting the testimony of a vocational expert with a hypothetical question that sets forth all of the claimant's limitations. The assumptions in the hypothetical question must be supported by substantial evidence. *Andrews*, 53 F.3d at 1043.

Here the ALJ elicited testimony based on the RFC assessment described above which contained the limitations the ALJ found credible and supported by substantial evidence. *Bayliss*, 427 F.3d at 1217-8. Admin. R. 24. The VE testified that a person with Due's RFC could perform the activities and functions required in unskilled occupations such as linen sorter, circuit board assembler, and lot attendant. These occupations represent thousands of jobs locally and nationally. The ALJ relied on that testimony to conclude that Due retained the RFC to perform work that exists in significant numbers in the national economy. Admin. R. 24.

Due argues that the VE's testimony has no evidentiary value because the hypothetical did not include all of his limitations. Due's argument must fail because his challenges to the ALJ's evaluation of the evidence have no merit. The ALJ properly included the limitations he found supported by the record and excluded limitations supported only by discredited evidence. While the evidence in the record may be susceptible to an interpretation more favorable to Due, that is not a basis to overturn the ALJ's decision. *Batson*, 359 F.3d at 1193; *Andrews*, 53 F.3d at 1039–40.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

DATED this ___19th___ day of April, 2016.

_____
Robert E. Jones, Senior Judge
United States District Court